**HUMANA INSURANCE COMPANY,**
Plaintiff,

v.

**FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY and Mid–Century Insurance Company of Texas,**
Defendants.

Cause No. 13–CV–611–LY.

United States District Court,
W.D. Texas,
Austin Division.

Signed Sept. 24, 2014.

Elizabeth Michelle Tupper Butler, Michael P. Abate, Dinsmore & Shohl LLP, Louisville, KY, Raymond E. White, McGinnis, Lochridge & Kilgore, L.L.P., Austin, TX, for Plaintiff.

David L. Yohai, John Mastando, III, Weil, Gotshal & Manges L.L.P., New York, NY, Marcy Hogan Greer, Alexander Dubose Jefferson & Townsend, Yvonne K. Puig, Norton Rose Fulbright U.S. LLP, Austin, TX, for Defendants.

### ORDER ON REPORT AND RECOMMENDATION

LEE YEAKEL, District Judge.

Before the court are the Motion and Memorandum of Law in Support of Defendants Farmers Texas County Mutual Insurance Company and Mid–Century Insurance Company of Texas' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. Rule 12(b) (6) filed December 13, 2013 (Doc. # 24); Plaintiff's Opposition to Defendants' Motion to Dismiss the Amended Complaint filed January 10, 2014 (Doc. # 27); and Defendants' Reply filed January 31, 2014 (Doc. # 30). The motion, response, and reply were referred to the United States Magistrate Judge for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The magistrate judge filed his Report and Recommendation on February 26, 2014 (Doc. # 34), recommending that this court grant the motion and dismiss Plaintiff's federal claims with prejudice and decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

The parties received the Report and Recommendation on February 26, 2014, and objections if any, were due to be filed by March 12, 2014. *See* Fed.R.Civ.P. 72(b)(2). Plaintiff's Objections to Magistrate Judge's Report and Recommendation were filed March 12, 2014 (Doc. # 35). Defendants' Response to Plaintiffs Objections to the Magistrate Judge's Report and Recommendation was filed March 26, 2014 (Doc. # 36). Plaintiff filed a Notice of Supplemental Authority on July 17, 2014 (Doc. # 42). In light of Plaintiff's objections, the court has undertaken a *de novo* review of the entire case file and finds that the magistrate judge's Report and Recommendation should be rejected by the court for the reasons stated below.

Plaintiff Humana Insurance Company ("Humana") objects to the following findings of the magistrate judge: (1) that Medicare Advantage Organizations may not pursue a private cause of action under the Medicare Secondary Payer Act, 42

U.S.C. § 1395y(b); (2) that Medicare Advantage Organizations have no federal common-law right to charge an insurance carrier for medical expenses paid; (3) that Humana is not entitled to declaratory judgment; and (4) that supplemental jurisdiction over Humana's state-law claims should be declined.

*Private Cause of Action under Medicare Secondary Payer Act*

The Medicare Secondary Payer Act (the "Act") creates remedies against a primary plan that fail to satisfy its statutory obligation to make primary payments or reimburse conditional Medicare payments by establishing two separate causes of action against noncompliant primary plans. The first belongs to the United States, which "may bring an action against any or all entities that are or were required or responsible ... to make payment ... under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii) (West Supp.2014). The second is a private cause of action with no particular plaintiff specified:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

*Id.* at § 1395y(b)(3)(A). In *In re Avandia Mktg.*, 685 F.3d 353 (3d Cir.2012), the Third Circuit addressed the same issue raised in this case—whether a Medicare Advantage Organization, such as Humana, may bring a private cause of action against a primary plan under the secondary provision of the Act. The Fifth Circuit has not addressed the issue. The Third Circuit held that the text of Section 1395y(b)(3)(A) "unambiguously provide[s] Humana with a private cause of action." *Id.* at 365. The Third Circuit found "that the provision is broad and unambiguous, placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary plan fails to appropriately reimburse any secondary Payer." *Id.* at 359. "Congress was certainly aware that private health plans might be interested private parties when it drafted the cause of action, and it did not exclude them from that provision's ambit." *Id.* at 367. Therefore, the Third Circuit concluded, any private plaintiff with standing may bring an action. *Id.* at 367. This court agrees. This court finds the Third Circuit's analysis persuasive. Therefore, the court will reject the magistrate judge's recommendation to grant Defendants' motion to dismiss Humana's cause of action for double damages under Section 1395y(b)(3)(A).

*Additional Claims*

Having determined that Humana may bring a private cause of action against Defendants under the Act, the court need not address Humana's remaining objections to the magistrate judge's findings regarding Humana's additional claims as those claims are still viable.

**IT IS THEREFORE ORDERED** that Plaintiff's Objections to Magistrate Judge's Report and Recommendation filed March 12, 2014 (Doc. # 35) are **SUSTAINED.**

**IT IS FURTHER ORDERED** that the Report and Recommendation of the United States Magistrate Judge (Doc. # 34) is **REJECTED**[1] to the extent set forth above.

---

1. The court notes that the magistrate judge rejected Defendants' argument that only a group health plan may be sued under Section 1395(b)(3)(A). Defendants did not file an objection to the magistrate judge's Report and Recommendation. Therefore, Defendants

IT IS FURTHER ORDERED that, in all other respects, the Report and Recommendation of the United States Magistrate Judge is **ACCEPTED AND ADOPTED.**

IT IS FINALLY ORDERED that Defendants' motion to dismiss contained in the Motion and Memorandum of Law in Support of Defendants Farmers Texas County Mutual Insurance Company and Mid–Century Insurance Company of Texas' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. Rule 12(b)(6) filed December 13, 2013 (Doc. # 24) is **DENIED.**

## *REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

MARK LANE, United States Magistrate Judge.

Before the Court are the Motion and Memorandum of Law in Support of Defendants Farmers Texas County Mutual Insurance Company and Mid–Century Insurance Company of Texas' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. Rule 12(b)(6), filed December 13, 2013 (Clerk's Dkt. # 24); Plaintiff's Opposition to Defendants' Motion to Dismiss the Amended Complaint, filed January 10, 2014 (Clerk's Dkt. # 27); and Reply Memorandum of Law in Further Support of Defendants Farmers Texas County Mutual Insurance Company and Mid–Century Insurance Company of Texas' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. Rule 12(b)(6), filed January 31, 2014 (Clerk's Dkt. # 30). The motion was referred by United States District Judge

have waived the right to challenge the magistrate judge's findings on that issue. *See United States ex rel. Steury v. Cardinal Health, Inc.,* 735 F.3d 202, 205 (5th Cir.2013) (citing *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir.1996) (*en banc* )).

Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

Plaintiff Humana Insurance Company ("Humana") brings this action against Defendants Farmers Texas County Mutual Insurance Company and Mid–Century Insurance Company (jointly "Defendants"). Simply put, Plaintiff is seeking reimbursement for medical expenses which it claims should be paid by Defendants. Defendants, in turn, contend Plaintiff does not have any right under federal law to recover those expenses from them.

This case involves the Medicare Act, one of "the most completely impenetrable texts within human experience." *Parra v. PacifiCare of Ariz., Inc.,* 715 F.3d 1146, 1150 (9th Cir.2013) (quoting *Cooper Univ. Hosp. v. Sebelius,* 636 F.3d 44, 45 (3rd Cir.2010)). Under the Medicare Act, codified at 42 U.S.C. § 1395 *et seq.* ("Medicare Act"), individuals eligible for Medicare can elect to receive Medicare benefits directly from the federal government through the original Medicare program, referred to as Parts A and B.[1] In 1997, Congress created the Medicare + Choice program, which

1. Part A is automatic and provides hospital and other facility benefits. 42 U.S.C. §§ 1395c–1395i–5. Part B, which provides medical benefits, is voluntary and requires a small premium payment. 42 U.S.C. §§ 1395j–1395w–4.

was later renamed the Medicare Advantage ("MA") program. This program, known as Part C of the Medicare Act, creates a private insurer alternative to Medicare Parts A and B. Under Part C, individuals may elect to receive Medicare benefits by enrolling with a Medicare Advantage organization ("MAO") in lieu of receiving direct benefits from the federal government. 42 U.S.C. § 1395w–21(a)(1).[2] MA plans are required to provide equivalent benefits to those provided under Medicare Parts A and B. 42 U.S.C. § 1395w–22(a).

In 1980, Congress enacted the Medicare Secondary Provider Act ("MSP Act"), 42 U.S.C. § 1395y(b). Under the MSP Act, Medicare benefits are secondary to other benefits available through "primary plans." 42 U.S.C. § 1395y(b)(2)(A). *See Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 863 (5th Cir.), *cert. denied*, —— U.S. ——, 134 S.Ct. 436, 187 L.Ed.2d 283 (2013) (MSP Act makes Medicare benefit provider a secondary payer when Medicare recipient has another source of primary insurance coverage); *Thompson v. Goetzmann*, 337 F.3d 489, 496 (5th Cir. 2003) (under MSP Act "Medicare serves as a back-up insurance plan to cover that which is not paid for by a primary insurance plan"). The definition of "primary plans" includes "an automobile or liability insurance policy ... or no fault insurance." *Id.*

Under the MSP Act, "the Secretary" is authorized to make conditional payments if an enrollee would otherwise not receive prompt coverage for medical treatment. 42 U.S.C. § 1395y(b)(2)(B)(i). A primary plan is required to reimburse "the appropriate Trust Fund for any payment made by the Secretary" if the primary plan was responsible for the expense. 42 U.S.C. § 1395y(b)(2)(B)(ii). The MSP Act provides that "the United States may bring an action" to recover from the primary plan and "collect double damages" if the primary plan fails to comply with the reimbursement requirement. 42 U.S.C. § 1395y(b)(2)(B)(iii). The MSP Act also specifically provides "[t]here is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)" as required. 42 U.S.C. § 1395y(b)(3)(A).

Humana is an MAO. Defendants issue automobile insurance policies containing no fault insurance provisions, which they do not contest fall within the definition of a primary plan under the MSP Act. Humana alleges it has paid medical expenses for enrollees in a Humana MA plan who were insured by Defendants under policies that include no fault insurance. According to Humana, it was not until after payment of the medical expenses that Humana discovered the enrollees were covered by policies issued by Defendants. Humana alleges it sought reimbursement from Defendants of the medical expenses, but Defendants have refused to reimburse Humana.

Humana filed this action seeking relief based on Defendants' conduct. Specifically, in Count One Humana requests a declaratory judgment declaring: (1) Defendants' policies are primary to Medicare benefits paid by MAOs, including Humana; (2) when an MAO, including Humana, pays Medicare benefits when such payments are secondary to a primary plan such as

---

**2.** MAOs contract with the Centers for Medicare and Medicaid Services ("CMS") to provide benefits to those who elect to enroll in their plans. CMS pays MAOs a set amount per enrollee, and the MAO administers and pays all valid claims, assuming the economic risk of expenses in excess of the capitated amount. 42 U.S.C. § 1395w–23.

Defendants' policies, Defendants are obligated to reimburse the MAO; and (3) Defendants may not avoid their obligations under the MSP Act by claiming the governing statutes permit, but do not require reimbursement or that their insurance coverage is not subject to subrogation. In Counts Two and Four Humana asserts a private cause of action under 42 U.S.C. § 1395y(b)(3)(A) against Defendants for double damages for their failure to pay as primary plan insurers or to make appropriate reimbursement for payments made by Humana. In Counts Three and Five Humana asserts a claim, under federal common law or alternatively under state law, to collect from Defendants the amount an MAO may charge under federal law for reasonable expenses incurred by MA enrollees. In Counts Six and Seven Humana asserts state law causes of action for restitution and equitable accounting for the amounts paid on behalf of MA enrollees which Humana contends Defendants are required to pay under their insurance policies.

Defendants have filed a motion to dismiss Plaintiff's claims on various grounds. Defendants contend Plaintiff's claims in Counts Two and Four asserting a private right of action under the MSP Act fail as a matter of law because: (1) Humana has failed to allege facts which show the statutory requirements for asserting such an action have been met; and (2) the private right of action under the MSP Act does not extend to MAOs. Defendants contend Plaintiff's claims in Counts Three and Five for charges fail as a matter of law because: (1) the MA statute does not create a private right of action for MAOs to recover from primary plans; (2) the MA statute does not provide a basis for asserting a claim under federal common law; and (3) Humana has not complied with the MA statute's requirement for making a conditional payment which would trigger a right

to reimbursement. Defendants contend Plaintiff's claim for accounting should be dismissed because Humana has not alleged a fiduciary relationship with Defendants. Defendants finally contend the court should decline to exercise supplemental jurisdiction over Humana's state law claims as all of Humana's federal claims fail as a matter of law. The parties have filed responsive pleadings and the matters are now ripe for review.

## II. STANDARD OF REVIEW

■ When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly,* 550 U.S. 544, 555–57, 127 S.Ct. 1955, 1965–66, 167 L.Ed.2d 929 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* 550 U.S. at 570, 127 S.Ct. at 1974. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The standard is properly guided

by "[t]wo working principles." *Id.* First, although "a court must accept as true all of the allegations contained in a complaint," that tenet is inapplicable to legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 678, 129 S.Ct. at 1949–50. Second, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679, 129 S.Ct. at 1950. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*, 556 U.S. at 679, 129 S.Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

### III. DISCUSSION

#### A. Private Action for Double Damages

Defendants maintain Plaintiff's claims in Counts Two and Four asserting a private right of action under the MSP Act fail as a matter of law because Humana has not alleged facts which meet the statutory requirements for asserting such a claim and the private right of action under the MSP Act does not extend to Humana as an MAO.

#### 1. Statutory Requirements

In pertinent part, as set forth above, the MSP Act provides for a private cause of

action for double damages "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). "Paragraph (1)" addresses the "requirements of group health plans." *Id.* § 1395y(b)(1). "Paragraph (2)(A)" provides:

> Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—

> (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

> (ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

> In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies.

*Id.* § 1395y(b)(2)(A).[3]

 According to Defendants, the clear language of the statute requires any party asserting a private cause of action for double damages to meet the requirements of both Paragraph 1 and Paragraph (2)(A).

---

**3.** As the Sixth Circuit has noted, "[c]alling these sections "paragraphs" is a bit of a misnomer, as most of them are several pages long and involve layers of subparagraphs, sub-subparagraphs, etc. However, because

the Act uses that terminology, we will adhere to it in this opinion." *Bio–Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 285 n. 9 (6th Cir.2011).

They first argue, because they are not "a group health plan," Humana cannot show they meet the requirements of Paragraph (1) which addresses only group health plans.

In support of their argument, Defendants point to the statement by the Sixth Circuit that "the private cause of action uses the conjunctive," thus a court is required to examine whether a primary plan failed to make a payment in accordance with both Paragraph (1) and Paragraph (2)(A). *Bio–Med.*, 656 F.3d at 285. The undersigned does not disagree that compliance with both paragraphs is required under the statute. But, the Sixth Circuit did not address what constitutes compliance with Paragraph (1) because the defendant did not dispute it was a group health plan.

Defendants additionally cite an opinion from a district court in the Sixth Circuit, which cites *Bio–Med,* and then states "[u]nless [the plaintiff] can identify how [the defendant] violated a specific provision of (1)(A)—which it has not done—it cannot pursue a private cause of action." *Mich. Spine & Brain Surgeons, PLLC v. State Farm,* 2013 WL 5435284, at *4 (E.D.Mich. Sept. 27, 2013). Defendants fail to point out, however, that the court in that case did not rely on the fact that the defendant was an automobile insurer, not a group health plan. Rather, the decision rested on the court's conclusion that the plaintiff had not alleged the defendant violated the provisions of Paragraph (1) which prohibit denial of claims based on the fact that the insured was eligible for Medicare. *Id.*

Finally, Defendants cite to a case in which the court directly addressed the issue presented here. Specifically, another district court in the Sixth Circuit, again citing *Bio–Med,* found a double damages claim requires the plaintiff to allege a violation of both Paragraph (1) and Para-

graph (2)(A). *Estate of Clinton McDonald v. Indem. Ins. Co. of N.A.,* 2013 WL 5425296, at *7 (W.D.Ken. Sept. 26, 2013). The court concluded, because the defendant was a worker's compensation insurer, and not a group health plan, a violation of Paragraph (1) could not be established by the plaintiff. *Id.*

As Humana notes, a district court case, which relies on authority outside this circuit, is not binding on this court. Defendants do assert the Fifth Circuit has held a plaintiff is entitled to bring an MSP double damages claim only if he can prove the requirements of both Paragraph (1) and Paragraph (2)(A). However, the decision cited for that proposition is that of a federal district court in Texas, not the Fifth Circuit. *Caldera v. Ins. Co. of the State of Penn.,* 2012 WL 360183, at *2 (S.D.Tex. Feb. 2, 2012).

More to the point, the defendant in *Caldera* was not a group health plan, but rather provided the plaintiff Caldera with worker's compensation insurance coverage. In addition, the district court did not address the applicability of Paragraph (1), but simply stated "Subsection (b)(1) requires group health plans to cover employees equally and is not at issue here." *Id.* And, finally, in affirming the decision the Fifth Circuit described the double damages cause of action by stating "[a] Medicare beneficiary may recover from his workers' compensation carrier" under the cause of action. *Caldera,* 716 F.3d at 863. The undersigned notes other circuit courts have not limited the double damages cause of action solely to claims against group health plans. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.,* 685 F.3d 353, 367 (3rd Cir.2012) (claim properly asserted against drug manufacturer); *Manning v. Utils. Mut. Ins. Co.,* 254 F.3d 387, 391, 397 (2nd Cir.2001) (stating statute authorizes cause of action "against en-

tities designated as primary payers" in case against workers' compensation insurance carrier). *See also Thompson v. Goetzmann*, 337 F.3d 489, 496 (5th Cir.2003) (under MSP, "primary plan" is defined a "group health insurance plan, or as any another type of insurance plan, such as workman's compensation, liability insurance, or a self-insurance plan, that may reasonably be expected to pay for services promptly").

■ Defendants' restrictive reading of the double damages cause of action's reference to Paragraph (1) is against the weight of authority. Admittedly, neither the Fifth Circuit nor the other circuits cited above have directly addressed the issue. But the less restrictive reading renders the statute coherent as a whole, one goal in statutory construction. *See Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir.2013) ("if possible, we interpret provisions of a statute in a manner that renders them compatible, not contradictory"); *Murphy v. Penn. Higher Educ. Assistance Agency & Educ. Credit Manag. Corp.*, 282 F.3d 868, 872 (5th Cir.2002) (recognizing "we should attempt to give horizontal coherence to the United States Code and ensure that different statutes interact coherently and harmoniously"). Specifically, as set forth above, Paragraph (2)(A) refers to payments made under workmen's compensation or automobile insurance plans. If Paragraph (1) is read to limit the cause of action to payments made solely by group health plans, the reference to other plans would be rendered meaningless.

A more coherent reading of the statute would be to view the description of a potential defendant, a "primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)," as requiring the primary plan to have violated Para-

graph (1) by failing to comply with the requirements it imposes on group health plans, not by failing to meet the definition of a group health plan. Such a reading is in accord with the implicit holding of the Fifth Circuit in *Caldera*, as well as the remainder of the statutory provisions. *See Bio–Med.*, 656 F.3d at 286 ("Paragraph (1) prevents primary plans from limiting a planholder's benefits or coverage simply because the planholder is entitled to Medicare benefits").

■ Defendants also argue Humana has not stated a claim for double damages because Humana has not alleged any violation of Paragraph (2)(A). Specifically, Defendants contend Humana has not alleged it made a "conditional payment." Paragraph (2)(B) permits Medicare to make a "conditional payment" when "a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations)." 42 U.S.C. § 1395y(b)(2)(B). In other words, "Medicare may not pay for any item or service to the extent that the Act requires a primary plan to pay, except that Medicare may conditionally pay for the item or service if the primary plan cannot reasonably be expected to pay promptly." *Bio–Med.*, 656 F.3d at 286. *See Fanning v. United States*, 346 F.3d 386, 389 (3rd Cir.2003) (under MSP, "when Medicare makes a payment that a primary plan was responsible for, the payment is merely conditional").

According to Defendants, Humana has not alleged it made a conditional payment, but rather asserts it paid for enrollees' expenses then later discovered Defendants were liable for enrollees' expenses as the primary payer. Defendants maintain a proper conditional payment requires the payer to investigate and determine wheth-

er the primary plan "cannot reasonably be expected to make payment." Defendants contend, because Humana paid without any investigation of whether Defendants would make payment, Humana has not stated a claim.

Humana, in turn, points to the regulation which defines a conditional payment as "a Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed." 42 C.F.R. § 411.21. Humana argues it acted consistently with this regulation because it made payments for the expenses of its enrollees without "know[ing] that the other coverage existed."

Defendants maintain the regulation on which Humana relies is inconsistent with the clear test of the MSP Act, and is thus not entitled to any deference. They argue Humana's reading of the statute would create perverse results where policy limits may have been reached under the primary plan, but reimbursement was still sought. Finally, Defendants point out Medicare regulations require an MAO to identify and coordinate with primary payers. *See* 42 C.F.R. § 422.108(b) (MAO must, for each MA plan, "[i]dentify payers that are primary to Medicare," "[i]dentify the amount payable by those payers," and "[c]oordinate its benefits to Medicare enrollees with the benefits of the primary payers"). They maintain Humana's failure to identify Defendants as primary payers is fatal to its claim.

Absent from Defendants' argument is citation to any case which employs their reading of Paragraph (2)(A). Nor is the argument otherwise compelling. The undersigned does not see any conflict in interpreting the phrase "cannot reasonably be expected to make payment" to govern the situation where payment is not reasonably expected because the secondary payer does not have knowledge that a primary payer existed. Further, Humana's statement in its complaint that it "was unaware of the existence of the primary coverage" issued by Defendants at the time it paid its enrollees expenses falls short of establishing as a matter of law that it did not discharge its obligations to attempt to identify primary payers. Rather, the statement encompasses a diligent, but unsuccessful, attempt to do so by Humana. Accordingly, the undersigned finds Defendants' motion to dismiss Humana's claim for double damages on the ground Humana has not alleged a violation of Paragraph (1) and Paragraph (2)(A) should be denied.

### 2. Recovery by an MAO

Defendants also argue Humana's claim for double damages fails because the MSP Act's private right of action does not extend to MAOs. The centerpiece of Defendants' argument is the language of the statute itself. As set forth above, under the MSP Act "the Secretary" is authorized to make conditional payments and a primary plan is required to reimburse "the appropriate Trust Fund for any payment made by the Secretary" if the primary plan was responsible for the expense if an enrollee would otherwise not receive prompt coverage for medical treatment. 42 U.S.C. § 1395y(b)(2)(B)(i) & (ii). The statute's creation of a private right of action is to enforce the obligation of "a primary plan which fails to provide for primary payment (or appropriate reimbursement)." *Id.* § 1395y(b)(3)(A).

Defendants maintain the language of the statute limits the private right of action to conditional payments made by, and reimbursement sought for, only those payments made by Medicare from the Medicare Trust Fund. According to their con-

struction of the statute, Congress' failure to reference an MAO's ability to make payments or seek reimbursement renders the private cause of action unavailable to Humana. Defendants further maintain their reading of the statute is buttressed by the fact that the statute authorizing MAOs includes a provision permitting recovery by an MAO as a secondary payer from a primary payer, but does not confer on an MAO a private right of action for recovery. They conclude Congress' failure to include such a provision, coupled with the limiting language of the MSP Act, expresses Congress' decision not to provide such a remedy to an MAO. *See Thompson*, 337 F.3d at 499 (referencing "the well-known interpretative canon, *expressio unius est exclusio alterius*—" 'the expression of one thing implies the exclusion of another' " ").

The Fifth Circuit has not addressed this issue. In fact, only one circuit court has considered the issue, and concluded an MAO was entitled to assert a private right of action under the MSP Act. *Avandia*, 685 F.3d at 367. The decision in *Avandia* is, of course, not binding authority. The matter is thus one of first impression.[4]

As an initial matter, the undersigned notes the MSP Act effectively creates two causes of action for recovery from a primary payer. The MSP Act specifically provides that "the United States may bring an action" against a primary payer to recover a conditional payment. 42 U.S.C. § 1395y(b)(2)(B)(iii). In contrast, the double damages provision Humana seeks recovery under does not identify who may bring suit to recover a conditional payment, but simply states "[t]here is

established a private cause of action." *Id.* § 1395y(b)(3)(A). The Fifth Circuit has described the provision as serving to "incentivize citizens to aid the government in recovering funds erroneously paid by Medicare." *Caldera*, 716 F.3d at 863. *See Parra*, 715 F.3d at 1154–55 (private cause of action "was intended to allow private parties to vindicate wrongs occasioned by the failure of primary plans to make payments"); *Bio–Med.*, 656 F.3d at 295–96 (concluding double damages cause of action created to provide incentive to healthcare providers to sue primary payers); *Manning*, 254 F.3d at 394 (MSP "allow[s] for a multiplier of damages to enable the government to recover its funds while also providing a financial incentive for private citizens to bring such suits").

Humana points out the MSP Act imposes the primary and secondary payer structure on "[p]ayment under this subchapter." 42 U.S.C. § 1395y(b)(2)(A). Humana also notes the MA statute sets forth a primary and secondary payer structure, which is applicable "[n]otwithstanding any other provision of law." 42 U.S.C. § 1395w–22(a)(4)(A). Defendants do not disagree with Humana that the primary and secondary payer structure are applicable to both Medicare and an MAO. However, as they point out, nothing in the MA statute specifically grants an MAO a private cause of action to recover against a primary payer. And, if Congress intended for MAOs to recover payments from primary payers via a federal cause of action, it could have incorporated the private right of action into the MA statute. *See Gozlon–Peretz v. United States*, 498 U.S. 395, 404, 111 S.Ct. 840, 846–47, 112 L.Ed.2d 919 (1991) ("[W]here Congress includes particular

---

4. Our sister federal district court has cited *Avandia* with approval. However, that case involved recovery of funds paid directly by Medicare, not an MAO, and thus has little application. *See Thomas v. Standard Fire Ins.*

*Co.*, 2012 WL 3242226, at *1 (E.D.Tex. Aug. 7, 2012) (seeking recovery from worker's compensation carrier for conditional payments made by Medicare).

language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotations omitted and alteration in original).

Moreover, different language is used in setting forth the two structures. As discussed below, an MAO is permitted to, that is "may," charge a primary payer. 42 U.S.C. § 1395w–22(a)(4). In contrast, a primary payer is required to, that is "shall," reimburse Medicare for a conditional payment. *Id.* § 1395y(b)(2)(B)(ii). It is a "well settled rule of statutory construction that where different language is used in the same connection in different parts of a statute it is presumed that the Legislature intended a different meaning and effect." *In re Ramirez*, 204 F.3d 595, 599 (5th Cir.2000). *See Silva–Trevino v. Holder*, 742 F.3d 197, 203 (5th Cir.2014) (recognizing elementary canon of construction that when Congress uses different terms, "each term [is] to have a particular, nonsuperfluous meaning") (quoting *Bailey v. United States*, 516 U.S. 137, 146, 116 S.Ct. 501, 507, 133 L.Ed.2d 472 (1995)).[5]

Humana maintains any disagreement concerning an MAOs' ability to institute a private right of action is resolved by the applicable regulations. Specifically, Humana notes the regulations provide that an "MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f). Deference to an administrative regulation is due only where the statute is ambiguous. *Khalid v. Holder*, 655 F.3d 363, 366 (5th Cir.2011) (" 'If the intent of Congress is clear,'—that is, the statute is unambiguous with respect to the question presented—'the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' ") (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). Humana's reliance on the regulation requires the undersigned to conclude Congress' failure to include an explicit private right of action in the MA statute renders it ambiguous. But omission is neither inherently nor automatically ambiguous. *See Thompson*, 337 F.3d at 502 (rejecting government's interpretation of statutory scheme where the "government does not invite our attention to anything that could serve as a statutory hook on which to hang this argument"). Moreover, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291, 121 S.Ct. 1511, 1522, 149 L.Ed.2d 517 (2001).

Nor are the policy arguments offered by Humana compelling. The *Avandia* court opined that the purpose of Medicare Advantage is to "harness the power of private sector competition to stimulate experimentation and innovation that would ultimately create a more efficient and less expensive Medicare system." *Avandia*, 685 F.3d at 363 (citing H.R.Rep. No. 105–217, at 585 (1997), 1997 U.S.C.C.A.N. 176, 205–06

---

**5.** It is worth noting that the Sixth Circuit focused on this distinction in declining to find Medicare-substitute HMOs had a private right of action for recovery from primary payers under the MSP statute. *Care Choices HMO v. Engstrom*, 330 F.3d 786, 790 (6th Cir.2003) (finding HMO provision using permissive language (i.e., the HMO "may" obtain reimbursement), in contrast with MSP provision using mandatory language (i.e., Medicare payments "shall" be conditioned on reimbursement by the primary insurer) was "fairly clear indication that Congress intended the Medicare program to have more extensive rights than Medicare-substitute HMOs").

(Conf.Rep.) (stating MA program was intended to "enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options")). According to Humana, stimulation of innovation through competition requires recovery of conditional MSP payments, because "[i]f Medicare could threaten recalcitrant primary payers with double damages and MAOs could not, MAOs would be at a competitive disadvantage." *Avandia*, 685 F.3d at 363–64. Occupying the same position as Medicare is not, on its face, innovation. Nor is the mere fact that an MAO would benefit from a private right of action a sufficient basis for concluding one exists. *See California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) ("The question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries."). *See also Care Choices HMO*, 330 F.3d at 790 (concluding Congress intended Medicare to have more extensive rights than Medicare-substitute HMOs). Accordingly, Defendants' motion to dismiss Humana's cause of action for double damages under 42 U.S.C. § 1395y(b)(3)(A) should be granted.

## B. Charges

Defendants also contend Plaintiff's claims in Counts Three and Five for charges fail as a matter of law because the MA statute does not create an implied private right of action for MAOs to recover charges or provide a basis for asserting a claim under federal common law for recovery of charges.[6]

---

**6.** Defendants also maintain Humana cannot recover on its claim for charges because it has not complied with the statutory requirements. Specifically, Defendants contend Humana has not made a "conditional payment"

## 1. Private Right of Action

In pertinent part, the MA statute provides that an MAO:

> *may* (in the case of the provision of items and services to an individual under a [Medicare Advantage] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services

42 U.S.C. § 1395w–22(a)(4) (emphasis added). Defendants maintain the permissive language of the statute, as well as the failure of Congress to specifically provide for a private right of action, renders Humana's assertion of a claim for "charges" under the statute impermissible.

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979)). Rather, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286, 122 S.Ct. 2268, 2277, 153 L.Ed.2d 309 (2002). Thus, without the intent of Congress "a

---

as prescribed in the statute. As discussed above, Dependants' contention is without merit and does not provide a basis for dismissal of Humana's claim.

cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander*, 532 U.S. at 286–87, 121 S.Ct. at 1520.

As Defendants point out, the MA statute does not explicitly create a private right of action for MAOs to recover the charges referenced in the above section. Defendants further maintain Humana has not pointed to any statutory language, or other support, for the creation of an implied right of action. Humana does not disagree, but in its response to the motion to dismiss states "that is not the argument Plaintiff advances, rather Humana asserts it may recover those charges under an independent federal common law and/or state law cause of action." (Plf. Opp. to Def. Mot. to Dism. at 18). As Humana has agreed it is not contending it can recover "charges" under a private right of action, the undersigned will turn to Humana's assertion of a common law right to recover against Defendants.

## 2. Federal Common Law

■ As the Supreme Court has made clear, "[t]here is no federal general common law." *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Thus, "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in … narrow areas." *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (noting federal common law exists in areas concerning rights and obligations of United States, interstate and international disputes implicating conflicting rights of states, relations with foreign nations and admiralty cases). Moreover, the existence of federal statutes does not "automatically show that Congress intend-

ed courts to create federal common-law rules," because "[w]hether latent federal power should be exercised to displace state law is primarily a decision for Congress, not the federal courts." *Atherton v. F.D.I.C.,* 519 U.S. 213, 218–19, 117 S.Ct. 666, 670, 136 L.Ed.2d 656 (1997).

■ Humana argues the MA statute's language granting an MAO the ability to charge an insurance carrier for medical expenses paid provides a legal basis for assertion of a claim for charges because the statute provides that the ability to charge applies "[n]otwithstanding any other provision of law." 42 U.S.C. § 1395w–22(a)(4). Additionally, Humana contends language in the MA statute and regulations makes clear Congress intended the MA statute to preempt state law. *See* 42 U.S.C. § 1395w–26(b)(3) ("standards established under this part shall supersede any State law or regulation" with respect to MAOs); 42 C.F.R. § 422.402 (same); 42 C.F.R. § 422.108(f) ("the rules established under this section supersede any State laws" that would otherwise apply to MAOs).

■ The Supreme Court has made clear "a significant conflict between some federal policy or interest and the use of state law" is normally a "precondition" to creation of federal common law. *Atherton,* 519 U.S. at 218, 117 S.Ct. at 670 (quoting *Wallis v. Pan Am. Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966) and *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 87, 114 S.Ct. 2048, 2055, 129 L.Ed.2d 67 (1994)). Humana asserts there are inherent conflicts between the MSP scheme and state law. Specifically, Humana contends differences between the Medicare regulations and state subrogation laws could lead to differ-

ent outcomes in different states.[7] A generalized desire for uniformity is not enough to warrant the creation of federal common law. *O'Melveny,* 512 U.S. at 88, 114 S.Ct. at 2055 ("Uniformity of law might facilitate … nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty—but if the avoidance of those ordinary consequences qualified as an identifiable federal interest, we would be awash in 'federal common-law' rules").

Further, Humana has not pointed to any provision in the MA Act which would suggest Congress intended to create a federal common law cause of action for MAOs to recover "charges." Nor has Humana pointed to any decision in which a court has recognized such a cause of action. Rather, as Defendants point out, the only court which appears to have addressed the issue, declined to do so, because "[t]he Medicare Act contains no express directive for federal courts to formulate a common law of subrogation, let alone a set of priorities between competing claimants to insurance proceeds." *Parra,* 715 F.3d at 1155 (rejecting claim of MAO for reimbursement of medical expenses out of settlement paid on automobile insurance claim). Humana contends the decision in *Parra* is distinguishable because in that case the MAO sought recovery directly from its enrollee from a settlement paid by the primary plan. This distinction is without a difference, as the undersigned views recovery of money from monies paid to an enrollee by an insurer as essentially the same as recovery of money directly from an insurer. Accordingly, the undersigned concludes Humana has not shown the federal common law provides a legal basis for

asserting its claim for charges under the MA Act.

## C. Declaratory Judgment

Plaintiff suggests, even if the court concludes its specific claims for damages and charges are dismissed, its claim for a declaratory judgment is still viable. However, such a request is simply a remedy and not a free-standing claim *See Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.,* 666 F.3d 932, 938 (5th Cir.2012) (operation of federal Declaratory Judgment Act is procedural only and does not provide basis for federal jurisdiction). As the undersigned has concluded Plaintiff has failed to allege any viable claim of a violation of federal law, Humana's claim for a declaration of its rights under federal law should be dismissed. *See Smith v. JPMorgan Chase Bank, N.A.,* 519 Fed. Appx. 861, 865 n. 5 (5th Cir.2013) (because district court properly rejected all of plaintiffs' claims, it also correctly rejected request for declaratory judgment).

## D. State Law Claims

Defendants finally contend the court should decline to exercise supplemental jurisdiction over Humana's state law claims as all of Humana's federal claims fail as a matter of law. As the Supreme Court has stated, "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 876 (5th Cir.2000) (declining to exercise juris-

---

**7.** The undersigned notes the regulations cited by Humana address the ability of CMS to recover from primary payers. 42 C.F.R. § 411.24(f)(1) ("CMS may recover without regard to any claims filing requirements that

the insurance program or plan imposes on the beneficiary or other claimant"); 42 C.F.R. § 411.24(c) (providing amount "CMS recovers" if it is necessary for "CMS to take legal action to recover").

diction over supplemental state law claims following dismissal of all federal claims involved in case); *Robertson v. Neuromedical Ctr.,* 161 F.3d 292, 296 (5th Cir.1998) (upholding dismissal of plaintiff's state law claims following grant of summary judgment on federal claims). In light of the recommended dismissal of all of Plaintiff's federal claims, this Court should decline to exercise supplemental jurisdiction.[8] Accordingly, the state law claims against Defendants should be dismissed for lack of jurisdiction. The undersigned thus concludes Plaintiff's claims should be dismissed in their entirety.

## IV. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** the Motion and Memorandum of Law in Support of Defendants Farmers Texas County Mutual Insurance Company and Mid–Century Insurance Company of Texas' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. Rule 12(b)(6) (Clerk's Dkt. # 24) and dismiss Plaintiff's federal claims defendants with prejudice and decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir.1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150–53, 106 S.Ct. 466, 472–74, 88 L.Ed.2d 435 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

**SIGNED** on February 26, 2014.

---

8. Defendants also contend Humana's claim for accounting should be dismissed because Humana has not alleged a fiduciary relationship with Defendants. In light of the undersigned's conclusion that the court should decline to exercise supplemental jurisdiction over Humana's state law claims, this argument need not be addressed.